UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Matthew Rogers,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>Defendant. | No. 1:24-cv-00118-JLT-GSA<br><br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 14, 16)** |

### I.      Introduction

Plaintiff Michael Matthew Rogers seeks judicial review of a final decision of the Commissioner of Social Security denying his applications for social security disability insurance benefits (SSDI) and supplemental security income benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act.[1]

### II.      Factual and Procedural Background

Plaintiff applied for benefits on November 19, 2021 alleging disability beginning November 1, 2019.  The Commissioner denied the applications initially on March 11, 2022, and on reconsideration on June 9, 2022.  The ALJ held a hearing on February 8, 2023.  AR 49–101.  The ALJ issued an unfavorable decision on February 17, 2023.  AR 15–39.  The Appeals Council denied review on November 21, 2023 (AR 1–7) and this appeal followed.

### III.      The Disability Standard

Pursuant to 42 U.S.C. §405(g), "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge.  Doc. 8, 9.

by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is evidence that could lead a reasonable mind to accept a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The court must consider the record as a whole and may not affirm by isolating supporting evidence. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability, 2- whether the claimant had medically determinable "severe impairments," 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. See, 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work

experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 1, 2019.  AR 21.  At step two the ALJ found that Plaintiff had the following severe impairments: chronic pancreatitis, diabetes mellitus type I, hypertension, hyperlipidemia, obesity, seizures, major depressive disorder, generalized anxiety disorder, and panic disorder.  AR 21.  At step two the ALJ also found that Plaintiff had the following non-severe impairments:  history of benzodiazepine use disorder in remission, history of alcohol use disorder, diabetic neuropathy, mild non-proliferative diabetic neuropathy, bilateral myopia, and bilateral astigmatism.  AR 21.   At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 22–26.

The ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 416.967(b) with the following limitations:

> he can never climb ladders, ropes, or scaffolds; avoid all exposure to workplace hazards such as unprotected heights and dangerous moving machinery; and can perform simple routine tasks in an environment not involving work requiring a specific production rate such as assembly line work or work that requires hourly quotas but can perform work involving simple work related decisions and occasional work place changes and occasional interaction with supervisors, coworkers and the public as part of the job duties; frequently handle and finger with the bilateral upper extremities; and no pushing and pulling or operating foot controls with the bilateral lower extremities.

AR 26.

At step four the ALJ found that Plaintiff could not perform his past relevant work, including: congressional aide, employee relations representative, public relations representative, and marketing representative.  AR 32.  At step five, in reliance on the Vocational Expert's testimony, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Plaintiff could perform: cleaner housekeeping, small products assembler, and assembler of electrical accessories.  AR 33.  The ALJ therefore concluded that Plaintiff was not disabled since

the alleged onset date of November 1, 2019.  AR 33.

### V.    Issues Presented

Plaintiff asserts two claims of error: **1-** the RFC and (Mental) MRFC are not supported by substantial evidence; and **2-** The RFC and MRFC are not supported by substantial evidence of record, given the "new and material" evidence submitted to the Appeals Council ("AC") which would likely change the outcome of the decision.  MSJ at 1, ECF No. 14.

#### A.    RFC & (Mental) MRFC

##### 1.    Legal Standard

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a)(1).  The RFC must consider all of the claimant's impairments, severe or not.  20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014.  The ALJ must evaluate the intensity and persistence of symptoms to determine their impact on the individual's ability to perform work-related activities."  S.S.R. 16-3p at 2.

The evaluation ust be supported by specific, clear and convincing reasons.  *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).  Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence is still relevant.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

### 2.    **Discussion**

Plaintiff contends that ALJs, as laypersons, are not permitted to "play doctor" and interpret "raw medical data[2]" in functional terms without the aid of a medical expert who has reviewed the entire file.  MSJ at 9–10.  Plaintiff emphasizes that the ALJ found that the medical consultants who reviewed Plaintiff's file at the initial and reconsideration levels, Drs. Bobba, Singh, Leizer and McClain, found Plaintiff's physical and psychological impairment "not severe," which the ALJ found to be unpersuasive.  Id.

The ALJ explained as follows:

Dr. Bobba and Dr. Singh, DDS reviewing physician found that the claimant's physical health impairments were not severe in nature. [Ex.1A; Ex.2A; Ex.5A; Ex.6A]. The undersigned found these statements to be unpersuasive. First, their analyses are not supported by the medical record. Although there is no evidence to support the claimant's contention that he is disabled, there is also no evidence that supports the contention that the claimant's physical health impairments are not severe. The claimant's objective images do support some limitation in overall physical functionality. [Ex.1F/2]. Additionally, these administrative findings are not consistent with the medical evidence or with the claimant's subjective allegations. Even though the undersigned has determined that the claimant's subjective allegations are not themselves completely consistent with the medical record, there is at least enough evidence consistent with some of his allegations to support several physical limitations. [Ex.1F/2; Ex.7F/1; Ex.3F/1].

Dr. Leizer, and Dr. McClain, DDS reviewing psychologists also found the claimant's psychological impairments to be non-severe. The undersigned determined that these administrative findings were not persuasive. [Ex.1A; Ex.2A; Ex.5A; Ex.6A]. The analyses determining that the psychological impairments were not severe are not supported. While there are numerous references to normal mental status examinations found throughout the record, there exist additional indications of abnormal findings that are more supportive of moderate limitations in several of the broad areas of function. [Ex.2F/14; Ex.2F]. Additionally, these findings are not consistent with the treatment history. The claimant has required frequent psychiatric care since 2020. This fact alone suggests a more serious condition than the DDS psychologists believed apparent. (AR 31, emphasis added).

---

[2] "Raw medical data" is not synonymous with "all medical records," and Plaintiff does not explain how the caselaw using that phrase is applicable to the set of facts at issue here.

Thus, the ALJ found all four reviewing doctors' opinions unpersuasive. From this Plaintiff concludes that "Per the ALJ's own admission, she took it upon herself to 'play doctor;' reviewed the raw objective evidence of record using his own lay judgment and formulated a function by function RFC and MRFC assessment." MSJ at 9.

If the Court correctly understands Plaintiff's argument here, the argument is unpersuasive and ultimately not helpful to his position. Specifically, had the ALJ adopted the medical consultants' opinions that all of Plaintiffs' impairments were non-severe, the analysis would have ended at step two with a finding of non-disability due to no severe impairments. Thus, Plaintiff was not prejudiced by the ALJ's finding that these doctors' opinions were unpersuasive.

Plaintiff further explains that, "although there is no requirement that an ALJ must necessarily seek the opinion of a medical expert every time they review new medical evidence . . . where the Administrative Record lacks a medical opinion from a physician who reviewed all pertinent medical data, the ALJ is obligated to further develop the claimant's medical history; the ALJ is not permitted to make "an independent evaluation of the diagnosed impairments on plaintiff's ability to work on a function-by-function basis." MSJ at 11 (emphasis added).

Plaintiff's underlined statement quoted above is refuted by Ninth Circuit caselaw which explains that there "is always some time lapse between a consultant's report and the ALJ hearing and decision . . ." Meadows v. Saul, 807 F. App'x 643, 647 (9th Cir. 2020). Claimants often continue pursuing medical care during that time  This generates more medical records which, in turn, become part of the Administrative Record. ALJs are nearly always tasked with independently reviewing some medical evidence that was never considered by a medical expert and forming conclusions about the functional significance of that evidence. This is consistent with the ALJ's role as informed by the Ninth Circuit which explains that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC," Rounds, 807 F.3d at 1006 (9th Cir. 2015)

(emphasis added).

### a.    **Medical Evidence**

In relevant part, Plaintiff emphasizes the following abnormal clinical and diagnostic evidence, truncated here for brevity:

**1-** hospital stay 2/27/18 to 3/6/18 for diabetic ketoacidosis, pancytopenia, SIRS[3], hypokalemia, hyperlipidemia, ETOH (alcohol) abuse, hypertension, dysuria, acute kidney disease, acute electrolyte abnormalities, CT results of chronic pancreatitis, hypodense kidney lesion, 500+ glucose level (AR 544–45); **2-** 8/27/19 ER visit noting cystitis, chronic pancreatitis, hyperglycemia, mild and gap metabolic acidosis (AR 424).

**3-** 4/20/20 psychiatric visit diagnoses of generalized anxiety disorder, moderate recurrent major depression, and prescriptions for SSRIs, Benzodiazepines, and Clonidine (AR 467); **4-** 9/21/20 follow-up noting increased anxiety, Rexulti trial added (AR 469); the same findings were noted on 10/12/20 (AR 470); **5-** 11/23/20 visit noting increased anxiety and a panic attack, Rexulti dose increase (AR 472); **6-** 1/4/21 visit noting dysphagic speech; tearful mood and affect; cognitive function in questionable limits, and physician recommended ER visit (AR 474).

**7-** 2/4/21 visit reporting debilitating episode and alcohol consumption while taking double Xanax dosage, he was tapered off the Xanax, started low dosage Ativan and Latuda (AR 476); **8-** 4/5/21 visit notes continued anxiety, no relief from zoloft and he continues to use Xanax 3-4 times daily, prescribed Gabapentin for anxiety and neuropathy, discontinued the Xanax and prescribed Ativan for acute anxiety (AR 480); **9-** 5/12/21 ER visit for abdominal pain with a pain level of 8 out of 10 in the left and upper quadrant with nausea, firm area of induration in left mid flank, CT noting diffuse sigmoid diverticulosis and a thick bladder wall, (AR 404) "highly suspicious" for cystitis; he was diagnosed with chronic pancreatitis and hematoma of the flank (AR 405); **10-** 5/17/21 follow up noting horrible anxiety and no relief from Gabapentin which was discontinued and Lyrica was started (AR 482); **11-** 6/22/21 visit noting worse anxiety in years, missed social event and job interview, and noted Ativan caused drowsiness (AR 484)/

**12-** 11/25/21 ER visit for seizure, tremors proceeding collapse and mumbling, diagnosed with syncope, and claimant reported he had doubled his Zoloft dosage for sleep without his doctor's authorization (AR 692); **13-** 4/12/22 two day hospital stay after not eating for four days to due epigastric pain, falling down, and suffering scalp hematoma per CT scan (AR 708–09), was diagnosed with seizure, alcohol withdrawal symptoms, hypoglycemia, alcoholic ketoacidosis, hypokalemia, hyperlipidemia, ETOH abuse, hypertension, diabetes mellitus, hyponatremia, thrombocytopenia, abdominal pain, and anxiety. (AR 708).

**14 -** 5/6/22 treatment note following seizure episode and was prescribed Keppra, Trazodone, and Xanax. (AR 760); **15-** 1/1/19 to 10/7/22 treatment notes for management of diabetes, obesity, hypertension, and hyperlipidemia with

---

[3] systemic inflammatory response system, aka sepsis

Lisinopril, Tresiba, Novolog, Atorvastatin, and Humalog. (AR 490-522; AR 746-54); **16-** 1/11/23 diagnosis of bilateral myopia, regular astigmatism bilaterally, and diabetes with mild bilateral non-proliferative diabetic retinopathy (AR 755); **17-** 11/21/22 follow-up for anxiety treated with Xanax, (AR 759).

b. **Testimony**

As to subjective symptoms, the summary is largely derived from Plaintiff's brief and the ALJ's recitation, the accuracy and completeness of which is not disputed.

Plaintiff testified that his pancreatitis causes debilitating pain 2 to 7 days per month. He states that it renders him unable to get out of bed, and is exacerbated by eating any solid food except for ice chips; (AR 70–71); his diabetic neuropathy causes extremity numbness which often renders him unable to walk or lift anything without dropping it; it also affects his sleep; he can sit 1 hour before his legs go numb and he needs to get up and walk around (AR 72); during an 8-hour day he lies down for 4 hours (AR 73); he occasionally has to check into the hospital for IV fluids and pain killers; Gabapentin is ineffective (AR 75); his seizure was not an "alcohol withdrawal seizure" but rather he had been drinking and celebrating with friends and Dr. Grahm "immediately looked over the hospital notes and assured me that it was not an alcohol withdrawal seizure;"; he is permitted "limited amounts of alcohol"[4] (AR 76).

Plaintiff goes on to state that he suffers depression stemming from a childhood sexual assault; the severity of his anxiety varies; when it strikes he stays in his room; if it becomes extremely severe, such as during public speaking while working for the United States Senate, he takes medication; depression medication does help; less so with his anxiety; his anxiety is triggered by being around many people, or sometimes even a few people; his depression makes it difficult to focus on work at hand; he does not perform cooking, cleaning or house chores; he leaves the house to pick up prescriptions and go to church when he is able up to twice a month (AR 85); he has no

---

[4] This is uncorroborated by a citation to the record that any medical provider authorized Plaintiff to consume any amount of alcohol while concurrently taking benzodiazepines.

hobbies other than reading; he does not engage in social interaction other than with family; he has lost a lot of his friends; he spends his time watching TV or in bed from severe pancreatitis (AR 87); he has experienced significant loss recently and is unable to attend funerals for friends and family; in other instances he forgot about a funeral until it was already past; his mother must put his medication in a pillbox labeled for the day (AR 90); he is not always able to tend to his hygiene; he goes days without showering due to pancreatitis and depression; numbness prevents him from typing or using his phone more than 30 minutes followed by a 1 hour break (AR 91).

Relevantly, the VE testified that more than 10% off task behavior, 4 unscheduled breaks of 15+ minutes, or 3+ days of absenteeism per month, are all work preclusive (AR 99–100).

### c.    **ALJ's Related Findings**

The ALJ noted Plaintiff's diagnosis of chronic pancreatitis and the testimony concerning the debilitating associated pain that often renders him bedridden. AR 28. However, as the ALJ further noted, an August 2019 treatment note indicated epigastric tenderness but no other indications of pain or discomfort, and that Plaintiff was not seen again for this issue until May 2021, nearly 2 years later. AR 28 (citing Ex. 1F/2, 20; AR 399, 417). The ER records from that visit noted abdominal pain level 8 out of 10 in the left and upper quadrant with nausea, firm area of induration in left mid flank, CT noting diffuse sigmoid diverticulosis and a thick bladder wall, (AR 404) "highly suspicious" for cystitis, and a diagnosis of chronic pancreatitis and hematoma of the flank (AR 28, citing AR 405). Plaintiff was not seen again until November 2021. *Id.* Of some note here, the episodic nature of the pancreatitis flareups seems to undermine the notion that the condition renders him chronically bedridden.

With respect to the medical evidence and Plaintiff's testimony concerning his seizures, Plaintiff was admitted to the ER following a convulsion, fall, and resulting scalp hematoma. As the ALJ noted, the record states "His parents witnessed him fall and go into a convulsion. He had been

drinking a pint of vodka daily and then stopped 4 days ago." AR 28, 709. Further, the record notes "withdrawal symptoms-alcohol (present on admission)." AR 709.

As the ALJ further noted, despite Plaintiff's testimony to the contrary (AR 76), his primary care physician did not state that the seizure was not the result of his drinking, nor did his primary care doctor report what he believed caused the claimant's seizure. AR 23, 28 (citing AR 709). Indeed, the record certainly does not state that ETOH abuse was ruled out as a cause, not does it indicate that any provider authorized him to use alcohol. The ALJ concluded, "what is clear is that he has had one verifiable seizure in the last three years with no additional symptoms or seizure since April 2022." AR 29. This undermines any suggestion that his seizures, regardless of their etiology, was the cause of any significant or ongoing limitations in Plaintiff's functioning.

The ALJ also discussed Plaintiff's diabetic peripheral neuropathy and the alleged difficulties it causes with standing, walking and holding objects according to Plaintiff's testimony and function reports from his family. AR 29. As the ALJ explained, "despite his prescriptions for Lyrica and Gabapentin, there is no indication from any of his physical examinations of limitations or signs of loss of function secondary to neuropathy." *Id.*

Plaintiff neither acknowledges nor disputes the ALJ's finding in this regard. Further, Plaintiff's summary of relevant medical evidence only mentions the diagnosis and the prescriptions for Lyrica and Gabapentin. MSJ at 2–4. Plaintiff does not otherwise discuss the medical evidence concerning the condition, nor identify any physical examination findings that would corroborate debilitating gait abnormalities and sensory loss.

Finally, the ALJ discussed Plaintiff's mental health conditions as follows:

As for the claimant's mental function, the record also showed some but no more than moderate issues with his mental health. In April 2020, the claimant reported occasional anxiety symptoms that were controlled with the use of Xanax. [Ex.2F/7]. His mental status examination at that appointment indicated that he was cooperative, polite and had a normal mood and affect. There was no evidence of psychosis, and his cognitive function and orientation were normal. The claimant was "doing well."

10

His September 2020 follow up appointment suggested similar findings as the claimant stated that his <u>medications were working and effective</u>. [Ex.2F/9]. However, he added that <u>on occasion, he noticed an increase in anxiety as Zoom meetings</u> seemed to exacerbate his symptoms. In November 2020, the claimant reported that his <u>mediations were "working great."</u> [Ex.2F/12]. The claimant did have some increased symptoms of anxiety but added that he treated these instances with Xanax. His mental status examination indicated no changes. <u>He continued showing a mental status within normal limits.</u>

In January 2021, the claimant reported that he was <u>"not doing well at all."</u> [Ex.2F/14]. The claimant stated that his anxiety was <u>"really bad."</u> His mental status examination through the telephone appeared normal except there was an indication that the claimant's <u>cognitive functions had "questionable limits."</u> His doctor aske the claimant to present immediately to an emergency room for a better evaluation. However, the claimant did not go to the emergency room at that time. He did meet with his endocrinologist three days later. [Ex.3F/4-5]. However, that appointment showed no significant issues with his mental health. The claimant's March 2021 follow up indicated that he was <u>"doing well with his mental health."</u> [Ex.2F/18]. He was using Xanax on a nearly daily basis. His <u>mental status examination appeared to be within normal limits</u>. In June 2021, the claimant reported that his <u>anxiety was the worst it had been in years</u> and asked that he be placed back on Xanax. [Ex.2F/24]. He indicated that he <u>was not able to participate in Father's Day activities and missed a job interview due to the nature of his anxiety</u>. The claimant's mental status was normal, and his psychiatrist noted that he was "doing fair." A November 2021 follow up indicated that his <u>anxiety had been "minimal" with the use of medications.</u> [Ex.2F/26]. The claimant's mental status examination at that time was normal and his doctor indicated that he was <u>doing well</u>. The claimant's last mental status examination of record in December 2022 noted that the claimant had no significant problems. [Ex.5F/9]. He had a normal mental status examination and his doctor reported that he was "doing well."

AR 28–29 (emphasis added).

Thus, the ALJ's characterization of Plaintiff's mental health impairments as moderate in severity is well supported. Plaintiff's symptoms appear to have waxed and waned as he often reported doing well with his medication regimen, his mental status exams were normal despite instances where his anxiety was described as "really bad" or "the worst it had been in years," though these instances were again followed by periods of stable symptom reports and clinical findings.

Finally, Plaintiff's emphasis on certain situational stressors do not contravene the RFC. To begin, Plaintiff noted increased anxiety triggered by zoom meetings while working as an independent consultant for the Biden campaign (MSJ at 2, citing AR 470), as well as agoraphobia

while working as a congressional aid for the United States Senate (MSJ at 7, citing AR 81).  Yet the ALJ did not find that Plaintiff could perform any past relevant work, such as a congressional aid.  AR 32.  Rather, the RFC reflects a limitation to simple and routine tasks in a mostly static work environment with only occasional social interaction, which the VE testified would not preclude performance of jobs such as housekeeping cleaner, small products and electrical assembler.  AR 33.

Consistent with that finding, "District courts throughout the Circuit have [] concluded a claimant's low tolerance for stress . . . [is] encompassed in a residual functional capacity of simple, repetitive tasks."  *Henry v. Colvin*, No. 1:15-CV-00100-JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (collecting cases).

Plaintiff largely does not acknowledge or dispute the ALJ's findings regarding the functional implications of the conditions described above.  Rather, as discussed above, Plaintiff's argument hinges on the unsupported contention that an ALJ is prohibited from independently assessing the functional implications of those conditions without the aid of a medical expert.

## B.    Appeals Council's Exclusion of New Evidence

Plaintiff disputes the Appeals Council's decision not to admit evidence Plaintiff submitted post-hearing, namely two treating providers' opinions.

### 1.    Applicable Law

No later than five business days before the date of the hearing, a claimant must submit all written evidence to the administrative law judge who will conduct the hearing in the claimant's case.  20 C.F.R. § 416.1435(a).  The ALJ may also accept information after the five-day deadline prior to issuing the hearing decision under circumstances enumerated in 20 C.F.R. § 416.1435(b).

In limited circumstances, a claimant may submit new and material evidence to the Appeals Council that relates to the period on or before the ALJ's decision.  *Brewes v. Comm'r of Soc. Sec.*

*Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012); 20 C.F.R. § 416.1470(a)(5). Evidence is material if it bears "directly and substantially on the matter in dispute," and there is a "reasonable possibility[5]" that the new evidence would have changed the outcome. 20 C.F.R. § 416.1470; *Tudor v. Saul*, 484 F. Supp. 3d 717, 726 (N.D. Cal. 2020) (citing *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).

### 2.    Analysis

On May 3, 2023, psychiatric treating provider NP Woodward completed a MRFC questionnaire regarding Plaintiff's anxiety and depression, and the side effects of his medications of drowsiness and persistent anxiety.[6] The form assesses 20 mental abilities in four functional categories from least severe limitation (Category 1) to most severe (category IV). AR 41. NP Woodward checked the box corresponding to Category IV for 20 out of 20 abilities. AR 41–42. At the place where the form asked how many days per month the claimant would be absent from work due to his mental health conditions, NP Woodward checked the box corresponding to 5 days or more. AR 43. NP Woodward indicated the opinion was based on progress and office notes, psychological evaluations and the patient's reports, but without specifying the same. *Id.*

In evaluating the persuasiveness of a medical opinion under the regulations, the two most important factors are supportability and consistency. 20 C.F.R. § 416.920c(a). As Defendant correctly contends, check off reports unsupported by explanation are unpersuasive. See Kitchen v. Kijakazi, 82 F.4th 732, 740-41 (9th Cir. 2023); Ford v. Saul, 950 F.3d 1141, 1155 (9th Cir. 2020). Further, the report is not well supported by NP Woodward's clinical findings and mental status examinations as the ALJ described above, which supported no more than moderate limitations.[7]

---

[5] Courts within the Ninth Circuit often use the phrase "reasonable possibility," although the regulations use the phrase "reasonable probability" 20 C.F.R. § 416.1470(a)(5).

[6] It's not clear how "persistent anxiety" is a side effect of anxiety medication.

[7] Further, despite the fact that NP Woodward checked the boxes corresponding to the most extreme functional limitations, absenteeism, somewhat paradoxically NP Woodward described Plaintiff's prognosis as "moderate."

Plaintiff provides no responsive discussion, nor an attempt to identify supportive clinical findings rendered by  either NP Woodward or other mental health professionals.  Rather, after reciting the functional categories verbatim, Plaintiff's analysis is again limited to the unsupported assertion that the ALJ is prohibited from translating clinical findings in functional terms.  MSJ at 16.  But as pointed out above, that is not accurate.

Further, NP Woodward's check off report is not an example of an expert's "translation" of clinical findings into functional terms.  The functional terms are already on the form, and NP Woodward did not independently offer any explanation for the limitations reflected in the boxes she checked.  Moreover, checking boxes on a form is not an explanation of how clinical findings---such as mood, affect, linear thought content, circumstantial speech---translate into functional terms (concentration, social interaction).

On May 8, 2023, Plaintiff's treating physician, Dr. Sahasranam, completed a physical medical source statement (MSS) concluding Mr. Rogers diabetic neuropathy caused various work preclusive limitations.  AR 45.  Dr. Sahasranam indicated  that Plaintiff's symptoms include extremity numbness, dizziness, fatigue and severe pain.  *Id.*

Although Plaintiff recites the entire content of the opinion at length, it was unnecessary to do so because the first page of the opinion is illustrative of precisely what the ALJ said about Plaintiff's diabetic neuropathy.  That is, despite the diagnosis and prescriptions for Lyrica and Gabapentin, "there is no indication from any of his physical examinations of limitations or signs of loss of function secondary to neuropathy."  AR 29.

Indeed, question number 6 asks the provider to "Identify the clinical findings and objective signs."  Here, Dr. Sahasranam left the space provided blank.  AR 45.  Next, the form asked the provider to identify any neurological abnormalities related to <u>sensation,</u> which he left blank; <u>reflexes,</u> which he left blank; and, <u>motor</u> [function], which again he left blank.  The remainder of

14

the form identifies what limitations Plaintiff has, not the basis for them.

For these reasons, there is no reasonable possibility or probability that either opinion would have changed the outcome of the decision.  Thus, the Appeals Council committed no error.

## VI.    Findings

Substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.

## VII.   Recommendations

For the reasons stated above, the recommendation is that:

1.    Plaintiff's motion for summary judgment (Doc. 14) be **DENIED.**

2.    Defendant's cross-motion (Doc. 16) be **GRANTED**

3.    That the decision of the Commissioner be **AFFIRMED**.

4.    That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

## VIII.  Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to the case per 28 U.S.C. § 636(b)(l). Within 14 days of these Findings and Recommendations, any party may file written objections. The document should be titled "Objections to Magistrate Judge's Findings and Recommendations."  The failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    __June 11, 2025__              _____ **/s/ Gary S. Austin**
                                         UNITED STATES MAGISTRATE JUDGE